IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LORENZO BAPTIST,

    Petitioner,

    v.

CHADWICK DOTSON, *Director, Virginia Department of Corrections*,

    Respondent.

Case No. 2:24-cv-12

## OPINION & ORDER

Before the Court is Petitioner Lorenzo Baptist's Objections to the Magistrate Judge's Report and Recommendation. ECF No. 16. For the reasons stated herein, the petitioner's Objection is **OVERRULED**, and the Report and Recommendation (ECF No. 15) is **ADOPTED**.[1]

## I. BACKGROUND

On November 18, 2015, a jury in the Circuit Court for the City of Newport News, Virginia found the petitioner guilty of abduction, malicious wounding, attempted strangulation, five counts of obstruction of justice without force, two counts of attempt to induce false testimony, and assault and battery of a family member. ECF No. 4 at 1.

---

[1] The Court has considered the arguments in the petitioner's brief and concluded there is no need to hold a hearing on the Objection. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

Case 2:24-cv-00012-JKW-LRL   Document 17   Filed 03/04/25   Page 2 of 14 PageID# 1172

This matter was initiated by a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, on January 5, 2024. ECF No. 1 (Original Petition). Pursuant to an Order by the Honorable Lawrence R. Leonard, the petitioner filed an amended petition on March 7, 2024. ECF Nos. 3 (Order), 4 (Amended Petition).[2]

Respondent Chadwick Dotson, Director of the Virginia Department of Corrections, filed a motion to dismiss. ECF No. 7. Judge Leonard recommended that the Motion to Dismiss be granted and the Petition be denied and dismissed with prejudice. ECF No. 15 ("R&R"). The parties were advised of their rights to file written objections to the Magistrate Judge's findings and recommendations. *Id.* at 16. The petitioner filed an Objection to the R&R. ECF No. 16.

## II.   LEGAL STANDARD

When a party files a written objection to a magistrate judge's R&R, the district court must determine *de novo* "those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[2] The petitioner states that he was sentenced to an "aggregate term of 36 years of incarceration." ECF No. 4 at 1. The R&R states that the petitioner was sentenced to an "aggregate term of thirty-eight years of incarceration." ECF No. 15 at 2. The Court of Appeals of Virginia noted a 38-year sentence (ECF No. 10-3 at 4), and the petitioner, in his petition for appeal, wrote that he "was sentenced to serve a total of 32 years plus 72 months," totaling 38 years. ECF No. 10.

2

### III. ANALYSIS

#### A. Statute of Limitations Under § 2254

The petitioner first objects to the R&R's conclusions on timeliness. ECF No. 16 at 1–3. The objection will be overruled because the petitioner's petition is untimely under § 2244(d)(1)(A). Under the Antiterrorism Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus under § 2254 must be dismissed if filed later than one year after:

> (A) the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). A petition is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). An untimely state petition "which does not fit within any exceptions to [the time] limit" is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

3

The state court judgment against the petitioner became final on October 25, 2017, when the Supreme Court of Virginia denied his petition for appeal. ECF No. 10-6. The statute of limitations began to run "90 days after the entry of the judgment," on January 23, 2018, when the deadline to file a writ of certiorari in the United States Supreme Court expired. *See Harris v. Hutchinson*, 209 F.3d 325, 328 n. 1 (4th Cir. 2000) (citing Sup. Ct. R. 13(1)). Thus, the statute of limitations period lapsed on January 23, 2019. At the earliest, the petitioner filed his *federal* habeas petition on December 13, 2023—four years, ten months, two weeks, and six days after time expired.[3] ECF No. 1 at 15.

### i. *Statutory Tolling*

AEDPA's statute of limitations tolls for the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The petitioner's state habeas petition was not "properly filed," because it was untimely. *Pace*, 544 U.S. at 417 (the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts); *see* ECF No. 10-2 at 5 (state court dismissal). Therefore, statutory tolling does not apply.

---

[3] The respondent claims that the petitioner filed his Original Petition on January 5, 2024, and amended it on March 5, 2024. ECF No. 9 at 4. However, the petitioner certified, under penalty of perjury, that he placed his Original Petition in the prison mailing system on December 13, 2023, and the Amended Petition in the prison mailing system on February 29, 2024. ECF No. 1 at 15; ECF No. 4 at 15. Accordingly, the Court analyzes the timeliness of the Amended Petition using the petitioner's dates. *See infra* III.A.ii. n.6 (application of the Prison Mailbox Rule).

The petitioner asserts that the R&R erroneously concluded the AEDPA statute of limitations was not tolled during the pendency of the petitioner's state habeas petition, because the state court should have considered the state habeas petition properly filed, since it was a single day late. ECF No. 16 at 1–2. But even if the Court were to credit the period during which the state habeas petition was pending, any possible tolling ended when the state court denied the petition on January 16, 2019, and the petitioner did not appeal. So even if the Court were to ignore the state court's determination that the state habeas petition was not properly filed, that would not result in a different outcome here: The federal habeas petition was still untimely.

### ii. *Equitable Tolling*

The petitioner objects to the R&R on the grounds that "the lateness [of his state habeas petition] was *de minimis* and caused by the prison mail system, a factor courts have held to be a basis for equitable tolling." ECF No. 16 at 2. "A petitioner is entitled to equitable tolling if [they] show[] (1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (quotation marks omitted).

> [E]quitable tolling is available only in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result. It is appropriate when, but only when, extraordinary circumstances beyond [the petitioner's] control prevented [them] from complying with the statutory time limit.

5

*Spencer v. Sutton*, 239 F.3d 626 (4th Cir. 2001) (quotation marks and citations omitted).

The petitioner first cites "ineffective assistance of counsel" as exceptional circumstances to warrant equitable tolling. ECF No. 14 at 2. He states that "[d]ue to ineffective assistance of counsel, [he] was required to attempt to learn law on his own in order to advance his claims." ECF No. 4 at 5.

First, "a mistake of counsel does not serve as a ground for equitable tolling as a matter of law." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (quotation marks omitted). The petitioner argues, that "ineffective assistance of counsel can provide cause to excuse procedural default when the claim is substantial[,] and the default was caused by ineffective counsel during initial-review collateral proceedings." ECF No. 14 at 6 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)). However, even if that exception applied here, it would not excuse a failure to comply with the statute of limitations. ECF No. 15 at 12 n. 8; *Carpenter v. Clarke*, No. 1:22-cv-605, 2022 WL 17325986, at *9 (E.D. Va. Nov. 29, 2022). The petitioner does not plead a substantial claim. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). It is not enough to assert that the petitioner "was required to attempt to learn law on his

own" or that new evidence of "previously disregard testimonies" and "audiovisual evidence" could have changed the outcome of the case. ECF No. 4 at 5, 7.[4]

Second, the petitioner says that he "diligently pursued his rights in the face of extraordinary circumstances that impeded timely filing," but he does not explain how he did that. ECF No. 14 at 1. The record indicates that the petitioner waited almost six years after his conviction became final to file his Original Petition. ECF No. 15 at 12. Such a long period, with no excuse for delay, does not demonstrate a diligent pursuit of rights.

The petitioner argues the Prison Mailbox Rule should apply to his state habeas petition.[5] However, even if this made the state habeas petition timely, the petitioner still did not file his federal habeas petition on time. *See supra* III.A.i. And applying the Prison Mailbox Rule to the federal petition cannot save the timeliness problem because the mail system cannot account for a delay of this length. Accordingly, the Court does not find a basis for equitable tolling.

---

[4] The petitioner also contends that "suppression of exculpatory evidence" justifies equitable tolling here. ECF No. 14 at 2. That argument fails for the reasons described in Part III.D., *infra*.

[5] The "Prison Mailbox Rule" dictates that "an inmate's document is deemed filed as of the date it is deposited in the prison mailing system." *Cadet v. United States*, No. 3:09-cr-44, 2012 WL 4854381, at *2 (E.D. Va. Oct. 11, 2012) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). The petitioner certified, under penalty of perjury, that he placed his Original Petition in the prison mailing system on December 13, 2023, and the Amended Petition in the prison mailing system on February 29, 2024. ECF No. 1 at 15; ECF No. 4 at 15.

7

### B. Actual Innocence as a Gateway to Overcome the Procedural Default[6]

A court may consider an untimely § 2254 petition if a "petitioner's incarceration represents a 'fundamental miscarriage of justice.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010); *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (citations omitted) (A petitioner "may obtain review of his constitutional claims only if he falls within the narrow class of cases . . . implicating a fundamental miscarriage of justice."). In order to utilize the gateway exception, a petitioner must make a showing of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (In cases concerning the "actual innocence" gateway to federal habeas review, "a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims.") The standard for such a showing is stringent, limiting the gateway to petitions that present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316. "If a petitioner presents new reliable evidence supporting a claim of actual innocence, the habeas court must determine whether it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Sharpe*, 593 F.3d at 377 (quotation marks omitted).

---

[6] Relevant to the discussion here, during trial, the court found that the petitioner forfeited his right to confrontation after the victim stated that she did not know if she could testify truthfully. ECF No. 15 at 3. The petitioner encouraged the victim to refuse to testify or lie on the stand, and he threatened her with violence if she did testify. *Id.*

8

The petitioner objects to the R&R on the grounds that "procedural barriers should not prevent colorable innocence claims from being heard." ECF No. 16 at 3. The petitioner says the R&R rejected his actual innocence claim on the basis that the audio was previously available, "without analyzing its materiality and probative value under *House v. Bell*, 547 U.S. 518 (2006),"[7] and if that error were corrected, his innocence claim would operate as a gateway to cure the procedural default. ECF No. 16 at 3.

The petitioner bases his actual innocence on "previously disregarded testimonies[8] and the full spectrum of audiovisual evidence that was not fully

---

[7] Here, the petitioner seems to reference the following passage:

> Assessing the reliability of new evidence, on the other hand, is a typical factfinding role, requiring credibility determinations and a weighing of the probative force of the new evidence in light of the evidence of guilt adduced at trial. We [previously] found it obvious that a habeas court conducting an actual innocence inquiry must do more than simply check whether there are genuine factual issues for trial.

*House v. Bell*, 547 U.S. 518, 560 (2006) (Roberts, J., concurring in part) (cleaned up).

[8] In his Original Petition, the petitioner also cited "police's failure to search his home, the dismissal of witnesses—namely his parents, Hakeem Wharton, and the victim—and the Commonwealth's failure to play the audio component of a video it showed to the jury at trial that allegedly contains a different individual admitting to harming the victim," as new evidence that supports his innocence. ECF No. 15 at 14 (citing ECF No. 1 at 18). This is not "new reliable evidence." *Sharpe*, 593 F.3d at 377. The R&R correctly stated that "neither investigators' failure to search [the] [p]etitioner's home nor [the] [p]etitioner's trial counsel's decision not to call certain witnesses are evidence, and therefore neither ground serves as 'new reliable evidence' that could support a gateway actual innocence claim." ECF No. 15 at 14–15.

9

presented at trial." ECF No. 4 at 7. The alleged audiovisual evidence includes a "video recording containing an admission by another individual and unheard witness testimonies." ECF No. 16 at 3. Upon *de novo* review of the evidence, the Court finds that even if the missing audio component of the video is new and reliable evidence, the petitioner has not demonstrated that it is "more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Sharpe*, 593 F.3d at 377. The audiovisual evidence—based on how the petitioner himself describes it—would have low probative force in light of the jury's determination that the other evidence—which was inconsistent with what the petitioner claims the audio showed—was credible. *See also* ECF No. 10-8 at 3–4 (state trial court's discussion about the missing audio, finding that admitting the audio "would have represented a two edged sword" (quotation marks omitted)). Preliminarily, even if the audio revealed, as the petitioner claims, that someone besides the petitioner admitted to assaulting the victim, that does not mean the petitioner did not also assault the victim or that he did not commit the other crimes for which he was convicted. Further, given that the jury found the petitioner guilty on two counts of attempt to induce false testimony, a reasonable juror may not have credited an alleged alternative confession presented by the defendant at trial. Thus, the petitioner fails to carry his burden to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Sharpe*, 593 F.3d at 377. As a result, his actual innocence claim does not cure the procedural default.

    **C.    Failure to Argue Ineffective Assistance of Counsel on Direct Appeal**

The petitioner asserts that his ineffective assistance of counsel claims should not be dismissed as procedurally defaulted, because Virginia prohibits ineffective assistance of counsel claims on direct appeal, so state habeas was the petitioner's first opportunity to raise this claim.[9] ECF No. 16 at 4. It is true that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). However, the ineffective assistance of counsel claim is not procedurally defaulted because the petitioner failed to raise it on direct appeal. It is procedurally defaulted because the petitioner filed the claim years after the deadline imposed by the statute of limitations passed. *See supra* Part III.A (discussion of timeliness). Accordingly, the Court finds that the petitioner's ineffective assistance of counsel claims should be dismissed as procedurally defaulted.

### D. *Brady* Violations and Suppression of Exculpatory Evidence

The petitioner argues "[t]he R&R's reliance on *Strickland v. Washington*, 466 U.S. 668 (1984), is misplaced," because the petition raises an argument under *Brady*

---

[9] The objection alleges "[t]he R&R improperly relies on *Coleman v. Thompson*, 501 U.S. 722 (1991)" when *Martinez v. Ryan*, 566 U.S. 1 (2012) should apply. ECF No. 16 at 4. But the R&R never cites *Coleman*, and neither of these cases applies, because the time bar has nothing to do with whether the petitioner raised his ineffective assistance of counsel claims on direct appeal.

11

*v. Maryland*, 373 U.S. 83 (1963), alleging a constitutional violation separate and apart from any showing of deficient performance by counsel. ECF No. 16 at 5. First, the R&R relied on *Strickland* to analyze the petitioner's ineffective assistance of counsel claim. ECF No. 15 at 5. *Strickland* governs such claims, so the R&R properly applied it. Second, the R&R does not address the *Brady* violation explicitly, because the evidence that is the subject of that claim—the audio—is insufficient to overcome the procedural default. *See supra* III.B (discussion of timeliness). However, as the rules for excusing procedural default of a *Brady* claim are slightly different from the rules for excusing procedural default of other types of claims, the Court will undertake a separate analysis.

When a "*Brady* claim is procedurally defaulted, [the court] must first decide whether that default is excused by an adequate showing of cause and prejudice." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). The alleged suppression of evidence can "constitute[] one of the causes for the failure to assert a *Brady* claim," but unless the evidence at issue is "material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome the procedural default." *Id*. Evidence is material in this sense if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. at 290. Here, the missing audio could not reasonably put the whole case in a different light or undermined confidence in the verdict, for the same reasons it fails to open the active

12

innocence gateway:[10] The alleged confession (as the petitioner has described it) of an alternative suspect would be quite unlikely to convince a jury, given substantial evidence of the petitioner's own admissions, up to and including his efforts to persuade witnesses to lie for him. Therefore, the *Brady* claim is procedurally defaulted.

## IV. CONCLUSION

Based on *de novo* review of the issues to which the petitioner objected, the Objection (ECF No. 16) is **OVERRULED**. The Report and Recommendation (ECF No. 15) is **ADOPTED**, the respondent's Motion to Dismiss (ECF No. 7) is **GRANTED**, and the petition for writ of habeas corpus (ECF No. 4) is **DENIED** and **DISMISSED**.

It is **ORDERED** that judgment be entered in favor of the respondent.

The petitioner has failed to demonstrate a "substantial showing of a denial of a constitutional right," and therefore, the Court declines to issue a certificate of appealability. Fed. R. App. P. 22(b).

The petitioner is **ADVISED** that because this Court declined to issue a certificate of appealability, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); Rules Gov. § 2254 Cases in U.S. Dist. Cts. 11(a). If the petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so by Thursday, April 3, 2025 by filing a written notice of

---

[10] It is unclear from the record whether the Commonwealth actually possessed, or could have reasonably obtained, the missing audio. For purposes of addressing the petitioner's argument, the Court assumes that it did.

appeal with the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the petitioner.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 4, 2025